# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| ARMANDO CORTINAS, *et al.*, | |
| Plaintiffs, | Case No. 2:11-CV-01480-KJD-NJK |
| v. | **ORDER** |
| STATE OF NEVADA HOUSING DIVISION, *et al.*, | |
| Defendants. | |

Before the Court is Defendant Wells Fargo Bank's Motion for Summary Judgment (#54). Plaintiffs filed a response (#56) and Wells Fargo filed a reply (#60).

<u>Background</u>

In May 1997, Plaintiffs purchased a home located at 1060 Sweeney Avenue, Las Vegas, Nevada (the "Property") with a $95,757 loan from North American Mortgage Company. The loan was secured by a Note and Deed of Trust in favor of North American Mortgage Company. In August 1997, Defendant State of Nevada Housing Division (the "Housing Division") was recorded as the beneficiary under the promissory note, and assignee of the deed of trust. Wells Fargo became the servicer on the loan on December 1, 2006.

1  In 2002 and 2003, Plaintiffs failed to make a number of mortgage payments and on August 1, 2003, Plaintiffs filed a voluntary Chapter 13 bankruptcy petition (the "Bankruptcy Action").  At the time Plaintiffs filed the Bankruptcy Action, they owed $13,790, equivalent to 14 missed monthly payments, plus charges and fees.  The Bankruptcy Action ultimately resulted in a Plan which required Plaintiffs to make monthly payments to the bankruptcy trustee and to pay the monthly mortgage payment.  During the Bankruptcy Action, Plaintiffs failed to make Plan payments to the trustee and missed several mortgage payments.  On January 7, 2007, Wells Fargo obtained an Order of Adequate Protection, which required Plaintiffs to continue making monthly mortgage payments as well as repay the missed payments.  Wells Fargo has presented evidence that after the Order of Adequate Protection was entered, Plaintiffs failed to make payments in January and February of 2007 and payments made in August and September 2007 and February 2008 were rejected for insufficient funds

The Bankruptcy Action was dismissed in December 2008 on motion of the trustee, because Plaintiffs failed to make Plan payments.  Based on the missed payments, Wells Fargo accelerated the loan.  Plaintiffs subsequently failed to cure the default on their home loan by repaying the full amount due or making any other arrangements.  Wells Fargo returned checks to Plaintiffs in December 2008, March 2009, and May 2009 because the payments did not represent the full amount due.  Plaintiffs did not tender any more payments to Wells Fargo from May 2009 through June 2010.

In May 2010, the Bankruptcy Action was re-opened to complete the Plan payments and the Action was finally discharged in August 2010.  During this time, Wells Fargo accepted three regular monthly mortgage payments.  After August 2010, Plaintiffs failed to make additional payments or cure the default.

On October 11, 2010, the Housing Division, through its designated trustee, National Default Servicing Corporation, filed a Notice of Default and initiated foreclosure proceedings.  Plaintiffs did not contact Wells Fargo regarding the Notice of Default or request any modification or other resolution.  Plaintiffs did not choose to participate in the Nevada Foreclosure Mediation Program.  A

foreclosure certificate was issued on January 13, 2011, and a Notice of Trustee's Sale was recorded the same day.

Plaintiffs were notified that their default could be cured by paying $31,966 by February 2, 2011. Plaintiffs did nothing to cure the default and on February, 2, 2011, the Housing Division purchased the property at the Trustee's Sale via a credit bid.

On April 25, 2011, the Las Vegas Justice Court issued a Temporary Writ of Restitution formally evicting Plaintiffs, and they were forcibly evicted on or about June 11, 2011. Plaintiffs re-entered the property the same day and stayed in the back yard. On about November 22, 2011, Plaintiffs re-entered the house and changed the door locks. At some point after the Trustee's Sale, persons who were apparently property management company employees came to the Property and changed the locks, cut grass, and rang the doorbell to see if the house was still occupied. The employees did not damage the Property and did not appear to touch anything in the house except for moving a television slightly. Plaintiffs' personal property was not disturbed or damaged. Plaintiffs have remained in the Property, without making any payment, and without paying any rent, despite the Property being sold and being evicted.

Plaintiffs filed this action in state court on August 15, 2011. Defendants removed the action here on September 14, 2011. The Court dismissed the bulk of Plaintiffs' claims in its December 30, 2011 Order (#31). However, the Court determined that Plaintiffs' wrongful foreclosure claim could not be dismissed at the pleading stage because Plaintiffs claimed they were not in default, and that they had the funds to cure the default, but their attempts to pay were rebuffed by Wells Fargo. Plaintiffs filed an amended complaint (#32) asserting claims for wrongful foreclosure, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, trespass to land, conversion, and slander of title and requesting declaratory relief.

II. Discussion

      A. Standard for Summary Judgment

      Summary judgment shall be granted if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual dispute for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

      All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party must produce specific facts, by affidavit or other evidentiary materials similar to those described in Rule 56, to show that there is a genuine dispute for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Summary judgment motions can only be defeated by admissible evidence. In re: Oracle Corporation Securities Litigation, 627 F.3d 376, 385 (9th Cir. 2010). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." Nilsson v. City of Mesa, 503 F.3d 947, 952 n. 2 (9th Cir. 2010) (citation omitted). An affidavit that contradicts the plaintiff's own deposition testimony is not sufficient to defeat summary judgment. Orr v. Bank of America, 285 F.3d 764, 780 n. 28 (9th Cir. 2002). Furthermore, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruing on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007)

      Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

B. Wrongful Foreclosure

1. Statutory Wrongful Foreclosure NRS 107.080

As the Court explained in its prior Order, Plaintiffs filed their complaint nearly six months after the trustee's sale in February 2011 and therefore did not timely comply with Nev. Rev. Stat. § 107.080(5)'s requirement that a party must file a complaint to void a foreclosure sale within 90 days of the trustee's sale and record a notice of lis pendens within 30 days of filing the complaint. Accordingly, Plaintiffs cannot maintain a cause of action to void a foreclosure under Nev. Rev. Stat. § 107.080. The Court lacks statutory authority to void Plaintiffs' foreclosure under NRS 107.080. Accordingly, summary judgment is granted in favor of Wells Fargo on Plaintiffs' statutory wrongful foreclosure claim.[1]

2. Common Law Wrongful Foreclosure

Under Nevada law, an action for the tort of "wrongful foreclosure" is available only if the Plaintiff can establish that at the time the power of sale was exercised no breach of condition or failure of performance existed on the plaintiff's part which would have authorized the exercise of the power of sale. See Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 623 (Nev. 1983); Haley v. Elegen Home Lending, LP, 2010 WL 1006664, at *1 (D. Nev. March 16, 2010) ("An action for wrongful foreclosure requires that, at the time of the foreclosure sale, the plaintiff was not in breach of the mortgage contract."). Accordingly, "the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised." Collins, 662 P.2d at 623.

24 CFR 203.606(a) and 24 CFR 203.554 are regulations promulgated by the Department of Housing and Urban Development which are incorporated into the Note and Deed of Trust. These regulations allow default only when the borrowers have failed to pay three or more monthly installments. 24 CFR 203.606(a) provides that "[t]he mortgagee may not commence foreclosure for

---

[1] In their Response, Plaintiffs make the unsupported claim that Mr. Cortinas never saw the Notice of Default. Mrs. Cortinas testified at her deposition that she saw the Notice, showed it to her husband, and discussed its meaning with him.

5

a monetary default unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account." 24 CFR 203.554 provides that "a mortgagee shall not commence foreclosure when the only default on the part of the mortgagor is the failure to pay late charge or charges."

Section 9(a)(i) of the Deed of Trust, provides that the borrower defaults by "failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment." The Deed of Trust also states that the Borrower has a right of reinstatement after default, but in order to reinstate the Deed of Trust, the Borrower must pay the full amount due to bring the account current in one lump payment. This amount includes foreclosure costs and reasonable attorneys' fees and expenses. Similarly, the Note states that if the Borrower defaults, the lender can "require immediate payment in full of the principal balance remaining due and all accrued interest."

It is undisputed that at the time Plaintiffs filed the Bankruptcy Action, they owed $13,790, equivalent to 14 missed monthly payments plus charges and fees. It is also undisputed that during the Bankruptcy Action, Plaintiffs failed to make payments to the trustee and missed several mortgage payments. The issue in dispute is whether Plaintiffs made payments after the January 7, 2007, Order of Adequate Protection was entered by the Bankruptcy Court. According to Wells Fargo's records, between January 2007 and February 2008, Plaintiffs failed to make five monthly mortgage payments. According to Wells Fargo, these five missed payments triggered the acceleration provision in the Deed of Trust, consistent with 24 CFR 203.606(a) and 24 CFR 203.554. Plaintiffs' own bank statements show that no payments were made in January and February of 2007, and that the personal checks submitted and accepted by Wells Fargo for payment in August and September 2007, and February 2008, were returned unpaid because their account had insufficient funds.

Plaintiffs have provided no documentary evidence that they made these payments, despite testimony that these funds would have come from their bank account and assurances that Plaintiffs would provide documentation. The only evidence offered by Plaintiffs are two affidavits, which

make only the bare assertion that they made the disputed payments by cashier's check as instructed by Wells Fargo. These sparse affidavits contain identical language and are self-serving, unsupported, contradictory, and not based on personal knowledge. For example, Mr. Cortinas testified at his deposition that he does not pay any bills, yet his affidavit claims that he paid the mortgage payment to Wells Fargo. Mrs. Cortinas testified that she made some of the payments to Washington Mutual. Similarly, both Plaintiffs' depositions contain testimony that they did not communicate with Wells Fargo, yet both claim to have been instructed by Wells Fargo to make payment via cashier's check. These affidavits do not create an issue of fact about whether Plaintiffs made payments in January, February, August, and September 2007 and February 2008.

It is undisputed that after the Bankruptcy Action was dismissed in December 2008, Plaintiffs never tendered payment to Wells Fargo for the full amount due, and Wells Fargo rejected Plaintiffs' payments because they did not represent the full amount past due. After May 2009, Plaintiffs did not tender any more payments to Wells Fargo until June 2010, when their request to re-open the Bankruptcy Action was granted and they tendered, and Wells Fargo accepted, three payments. It is undisputed that Plaintiffs did not tender any more payments to Wells Fargo after the Bankruptcy was discharged in August 2010. It is undisputed that after the Notice of Default was sent to Plaintiffs in October 2010, they did not contact Wells Fargo to make any repayment arrangements or to resolve any dispute they may have had with the amount due. At the time the Notice of Sale was recorded in January 2011, in order to cure the default, Plaintiffs would have been required to pay $31,966.41 by February 2, 2011. It is undisputed that Plaintiffs did not and could not cure the default. Accordingly, Plaintiffs have failed to show that there is a dispute of fact and their wrongful foreclosure claim fails.

### 3. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

To establish a claim for breach of contract, a plaintiff must allege: 1) the existence of a valid contract; 2) a breach by the defendant; and 3) damages resulting from defendant's breach. Saini v. Int'l Game Tech., 434 F.Supp.2d 913, 919–20 (D.Nev.2006); Brown v. Kinross Gold U.S.A., Inc., 531 F.Supp.2d 1234, 1240 (D.Nev.2008). Essential to the creation of a contract, whether express or

7

implied, is a manifestation, by the parties, of an intent to contract. See Smith v. Recrion Corp., 541 P.2d 663 (Nev.1975). In an implied contract, such intent is inferred from the conduct of the parties and other relevant facts and circumstances. Warrington v. Empey, 95 Nev. 136, 138–139 (Nev.1979). The terms of an implied contract can also be manifested by conduct or by other customs. Smith, 541 P.2d at 668.

An implied in fact contract must still be supported by consideration. Helash v. Ballard, 638 F.2d 74, 75 (9th Cir. Cal. 1980) citing Somali Development Bank v. United States, 508 F.2d 817, 822, 205 Ct.Cl. 741 (1974) (the obligations of parties to a contract implied in fact, like those of parties to an express contract, must be supported by consideration.) Under Nevada's preexisting duty rule "[c]onsideration is not adequate when it is a mere promise to perform that which the promisor is already bound to do." Cty. of Clark v. Bonanza, No. 1, 615 P.2d 939, 944 (Nev .1980); see also Ramanathan v. Saxon Mortg. Servs., Inc., No. 2:10–CV–02061–KJD–VCF, 2011 WL 6751373, at *3 (D.Nev. Dec. 21, 2011) ("It is axiomatic that giving a party something to which he has an indisputable right is not consideration.") (citing U.S. ex rel Youngstown Welding & Eng'g Co. v. Travelers Indem. Co., 802 F.2d 1164, 1169 (9th Cir.1986)).

In the Amended Complaint, Plaintiffs assert that there is an implied in fact contract for the servicing of the Plaintiffs' Loan which Wells Fargo breached by not applying the mortgage payments. According to Plaintiffs, when Wells Fargo sends a mortgage statement to the Plaintiffs, Wells Fargo is making an offer to service their loan, which is accepted by the Plaintiffs when they send a payment to Wells Fargo for the amount of the monthly mortgage payment. Plaintiffs assert that the consideration requirement is satisfied "every time they forwarded a mortgage payment" because it "allowed Wells Fargo to perform on their contract with the Housing Division."

Plaintiffs' argument is spurious. Under the terms of the Note, Plaintiffs agreed to make payments at "such place as Lender may designate in writing by notice to Borrower." Plaintiffs acknowledged that they were obligated to make payments and do not dispute that Wells Fargo was duly designated as servicer. Further, Plaintiffs made payments to Wells Fargo periodically and

acknowledged that they were informed that they were required to make payment to Wells Fargo. There is no dispute that Plaintiffs were subject to an existing obligation to pay their mortgage, which they were directed to satisfy by paying Wells Fargo in accordance with the Note. There is no implied contract between Wells Fargo and Plaintiffs. Accordingly, summary judgment is granted in favor of Wells Fargo on the claim for breach of implied contract. Because there is no implied contract, summary judgment is also granted on the breach of the covenant of good faith and fair dealing claim.

### 4. Unjust Enrichment

Unjust enrichment requires that "a person has and retains a benefit which in equity and good conscience belongs to another." Ramanathan v. Saxon Mortg. Services, Inc., 2011 WL 6751373 *6 (D.Nev.2011)(citing Leasepartners Corp. v. Robert L. Brooks Trust, 942 P.2d 182, 187 (Nev.1997)). Unjust enrichment only "applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." Id. Generally, mortgages are express contracts and unjust enrichment does not apply. Green v. Countrywide Home Loans Inc., 2011 WL 5926750 (D.Nev.2010).

Plaintiffs do not address Wells Fargo's motion for summary judgment of their unjust enrichment claim. Accordingly, Plaintiffs consent to the granting of summary judgment in favor of Wells Fargo on the unjust enrichment claim. See Local Rule 7-2. Further, the crux of Plaintiffs' claim is that Wells Fargo has been unjustly enriched because improperly retained five mortgage payments made in 2007 and 2008. Summary judgment is appropriate because, ss explained above, Plaintiffs have failed to offer anything to dispute Wells Fargo's evidence that Plaintiffs did not make these payments.

### 5. Trespass to Land and Conversion

In Nevada, "civil trespass consists of an unpermitted and unprivileged entry onto the land of another." Kim v. Wells Fargo Home Mortg. Inc., 2010 WL 4683732 (D. Nev. Nov. 9, 2010) citing Allied Props. v. Jacobsen, 75 Nev. 369, 343 P.2d 1016, 1021 (Nev. 1959). A claim for trespass also

1 requires that Plaintiff have title to the Property. Id. at *14 (finding a sustainable claim for trespass
2 where the alleged trespass occurred in January 2010, and Plaintiff did not lose title to the Property
3 until April 2, 2010).
4      In order to show trespass, Plaintiffs must demonstrate that they held title to the Property.
5 Accordingly, Plaintiffs' trespass claim is inexorably tied to their claim that the foreclosure was
6 wrongful. Since the Court has determined that Plaintiffs failed to demonstrate an question of fact on
7 this issue, the trespass claim also fails.
8      6. Conversion
9      Conversion is "a distinct act of dominion wrongfully exerted over another's personal property
10 [.]" Wantz v. Redfield, 326 P.2d 413, 414 (Nev.1958). Conversion cannot be asserted with respect to
11 real property. See, e.g., Goodwin v. Exec. Trustee Servs., 680 F.Supp.2d 1244, 1255 (D.Nev.2010).
12 NRS 118A.460 states that a property owner "may dispose of personal property abandoned on the
13 premises by a former tenant or left on the premises after eviction of the tenant without incurring civil
14 or criminal liability."
15      Summary judgment is granted on this claim because Plaintiffs improperly assert that the
16 Property itself was converted. Additionally, Plaintiffs have failed to demonstrate that an issue of fact
17 exists as to wrongful foreclosure on the Property. To the extent that Wells Fargo or its agents
18 exercised dominion over the personal property left behind by Plaintiffs after they were evicted from
19 the Property, they were acting in accordance with their right as holders of the title and pursuant to a
20 valid Writ of Restitution. Accordingly, summary judgment on the conversion claim is granted in
21 favor of Wells Fargo.
22      7. Slander of Title
23      Slander of title "requires the showing of false and malicious communications, disparaging to
24 one's title in land, and causing special damages." In re Mortgage Elec. Registration Systems (MERS)
25 Litigation, No. 09–2119–JAT, 2011 WL 251453, at *10 (D.Ariz. Jan. 25, 2011) (quoting Executive
26 Mgmt., Ltd. v. Ticor Title Co., 963 P.2d 465, 478 (Nev.1998)). The element of malice in a slander of

title action requires a showing that the defendant knew that the communication was false or acted in reckless disregard of its truth or falsity. See Rowland v. Lepire, 662 P.2d 1332, 1335 (Nev.1983). Reckless disregard is said to exist "when there is 'a high degree of awareness of ... probable falseness' of the statement, or there are 'serious doubts as to [its] truth.' " Restatement (Second) of Torts § 580A cmt. d (1977). When a defendant has reasonable grounds for belief in his claim, even if the claim proves to be false, there is no malice. Rowland, at 1335–36 (citation omitted).

There is no dispute of fact that Plaintiffs were in default when the Notice of Default was recorded and that Plaintiffs failed to cure the default. The Notice of Default and subsequent foreclosure documents did not slander Plaintiffs' title because they were not false. Further, Plaintiffs have offered absolutely nothing to show that Wells Fargo acted with malice. Accordingly, summary judgment is granted on the Slander of Title Claim.

### 8. Declaratory Relief

Declaratory relief is a remedy, not a cause of action or independent grounds for relief. See In re Wal–Mart Wage & Hour Emp't. Practices Litig., 490 F.Supp.2d 1091, 1130 (D.Nev.2007). As discussed in this order, summary judgment is granted in favor of Wells Fargo on each of Plaintiffs' claims. Accordingly, Plaintiffs' request for declaratory relief is denied.

### 9.  Summary Judgment in Favor of Other Defendants

Generally, a court may not grant summary judgment sua sponte. Buckingham v. United States, 998 F.2d 735, 742(9th Cir.1993) (summary judgment appropriate only where losing party has "reasonable notice that the sufficiency of his or her claim will be in issue."). Based on Wells Fargo's Motion, the Court believes that summary judgment should also be granted in favor of the Housing Division. In the Amended Complaint Plaintiffs do not identify any facts showing conduct by the Housing Division that would make their claims against it more viable than the failed claims against Wells Fargo.  Plaintiffs are hereby notified that if they wish to oppose summary judgment in favor the Housing Division, they must submit any opposition to summary judgment on or before March 25, 2013. If Plaintiffs choose to file an opposition, it must specifically identify why the Housing

Division should be held liable, in light of this Order granting summary judgment in favor of Wells Fargo.  Plaintiffs may not assert the discredited legal theories and scanty, self-serving evidence addressed in this Order.  Failure to comply with the Court's instructions will result in sanctions.

III. Conclusion

      **IT IS HEREBY ORDERED** that Wells Fargo Bank's Motion for Summary Judgment (#54) is **GRANTED**.

      **IT IS FURTHER ORDERED** that if Plaintiffs choose to file an opposition to summary judgment in favor of Defendant State of Nevada Housing Division, they must do so on or before March 25, 2013.  Any opposition filed must comply in every respect with this Order.

      DATED this 18th day of March 2013.

_____
Kent J. Dawson
United States District Judge